UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 25-CR-049 (CJN) |
| | : | |
| v. | : | |
| | : | |
| **LANOIX PIERRELUS,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Lanoix Pierrelus (hereinafter referred to as "defendant" or "PIERRELUS"), be detained pending trial pursuant to 18 § 3142 (d)(1)(A)(i): On release pending trial; 18 § 3142 (d)(1)(A)(iii): On probation or parole; and 18 § 3142 (f)(1)(E): Firearm/other dangerous weapon. As discussed further below, the defendant is charged by Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). In addition, as outlined in the defendant's Pretrial Services Agency (PSA) report the defendant has a previous firearm related conviction in 2023 and for that case "[t]he defendant is on supervised probation from 10/27/2023 to 10/27/2026, according to FBI and Maryland records. Agent Padgett reported that the defendant must report as directed, not possess firearms, avoid contact with law enforcement, and report any changes." *See* PSA at p. 4. Thus, there is no condition or combination of conditions that will assure the safety of the community or the defendant's return to Court if released. The government requests that the Court order the defendant detained pending trial.

Accordingly, the government requests that the following points and authorities, as well as

any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

I. **Procedural History**

The defendant is charged by Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). On March 25, 2025, at the defendant's initial appearance, the government orally moved for detention pending trial pursuant to the above-referenced provision of the federal bail statute, and any additional provisions that may apply upon further review of the PSA report.

## BACKGROUND

On Tuesday, October 22, 2024, officers of the Metropolitan Police Department ("MPD") were on routine patrol in a high-crime area when they observed a group of approximately eight individuals congregating in the street near a Toyota sedan and impeding the flow of vehicle traffic. Officers approached the group and observed a member of the group later identified as PIERRELUS appear to notice the presence of law enforcement, then quickly move near the rear passenger side door of the Toyota sedan and stop. Officers further observed PIERRELUS reach down near his groin area and then lower his body, concealing himself behind the Toyota sedan. PIERRELUS then stood up and moved to the rear of the Toyota sedan near the trunk. Officers immediately searched the area where PIERRELUS had reached near his groin and lowered his body, where they found a Ruger, model 57 pistol, bearing the serial number, 643-52761. The firearm was found loaded with ammunition, including one round in the chamber. Officers did not observe any other individuals near where the firearm was located in between the time PIERRELUS

2

reached down near his groin and lowered his body, and when they found the firearm. *See* Figure 1 below.



*Figure 1 MPD officer recovers firearm*

When officers searched PIERRELUS incident to arrest, they found a black satchel in his possession. In the satchel, they found fifty (50) blue pills marked "M30," which the officers know based on experience to be counterfeit oxycodone that are made with fentanyl. The pills were found in a plastic bag, not a prescription drug bottle. *See* Figure 2 below. DEA determined the pills to be fentanyl. *See* Government's Exhibit 1 DEA Drug Report.

3



*Figure 2 – pills recovered from PIERRELUS*

Officers did not find any prescription drug bottles when they searched PIERRELUS incident to arrest. Officers also found a digital scale and thirty (30) plastic bags in the satchel during the search incident to arrest, which your affiant knows through training and experience to be used for packaging narcotics for sale. PIERRELUS's identifiers were queried in law enforcement databases and no record of a license to carry a firearm in D.C. was found.

A review of PIERRELUS' criminal history revealed that PIERRELUS was previously

4

convicted: on or about April 21, 2023, PIERRELUS pled guilty to Loaded Handgun in Vehicle in the Circuit Court for Prince George's County, criminal case number C-16-CR-22-000247. This offense is punishable by greater than a year of imprisonment. PIERRELUS was therefore legally prohibited from possessing a firearm. Further, as a convicted felon, PIERRELUS knew or had reason to know that his receipt of a firearm would constitute a felony.

There are no federally licensed firearm or ammunition manufacturers in D.C. Therefore, the firearms and ammunition in this case must have traveled in interstate commerce and that the Ruger Model 57, 5.7mm Pistol, bearing Serial Number 643-52761, was manufactured outside of D.C. and therefore these items traveled in interstate commerce. There are no federally licensed firearms or ammunition manufacturers within D.C.

**II.    Legal Authority and Argument**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted,

5

and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross- examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36. A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

The United States seeks detention pursuant to 18 § 3142 (d)(1)(A)(i): On release pending trial; 18 § 3142 (d)(1)(A)(iii): On probation or parole; and 18 § 3142 (f)(1)(E): Firearm/other dangerous weapon. Therefore, a review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there are no conditions, or combination of conditions, that would ensure the safety of the community or the defendant's return to Court if released. Consequently, the defendant should be held pending trial.

**III.    The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community**

As outlined *supra*, there are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Thus, a further review

and understanding of the facts and circumstances in this case, as further outlined *infra*, require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

### A. Nature and Circumstances of the Offense Charged

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The defendant not only possessed a firearm, after previously having been convicted of another firearm offense, but in this case, he possessed a Ruger, model 57 pistol, bearing the serial number, 643-52761. The firearm was found loaded with ammunition, including one round in the chamber. The possession of loaded firearms by convicted felon with a previous firearm related offense is extremely dangerous. The increase of urban shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the defendant's possession of a loaded handgun placed the community at risk. *See e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public): *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2-3 (D.D.C. Sept. 21, 2020) (making the same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7-8 (noting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby

7

increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), aff'd, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), aff'd (D.D.C. Nov. 5, 2020). The firearm recovered firearm had all these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so problematic—especially by someone with the defendant's criminal history - because the number of gun violent crimes committed in the District of Columbia.

Furthermore, the defendant, despite being unable to legally possess a firearm and being on a previously court ordered supervision – where he previously pled guilty to possessing a Loaded Handgun in Vehicle in the Circuit Court for Prince George's County, criminal case number C-16-CR-22-000247 and on supervised probation at this time, the fact that he obtained a firearm is very troubling and alarming. The defendant could not have possessed the firearm legally due to his status as a felon, and therefore had an illicit source for the firearm, further demonstrating the potential dangerousness associated with the weapon and the defendant's prior significant convictions.

**IV.    The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention and is very strong. As outlined more fully *supra*, officers observed PIERRELUS reach down near his groin area and then lower his body, concealing himself behind the Toyota sedan.

PIERRELUS then stood up and moved to the rear of the Toyota sedan near the trunk. Officers immediately searched the area where PIERRELUS had reached near his groin and lowered his body, where they found a loaded Ruger, model 57 pistol.

In fact, the defendant's buccal swabs were taken and subsequently compared with buccal swabs from the firearm. The FBI DNA expert found, *inter alia*, the following:

**Item 1 (Swabs from firearm (CS1-1))**

*The DNA results from item 1 are 38 octillion times more likely if PIERRELUS and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.*

| Person of Interest (POI) | Likelihood Ratio (LR) | Level of Support |
|---|---|---|
| PIERRELUS | $3.8 \times 10^{28}$ (38 octillion) | Very Strong Support for **Inclusion** |

**Item 2 (Swabs from firearm (CS1-2))**

*The DNA results from item 2 are 29 octillion times more likely if PIERRELUS and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.*

| Person of Interest (POI) | Likelihood Ratio (LR) | Level of Support |
|---|---|---|
| PIERRELUS | $2.9 \times 10^{28}$ (29 octillion) | Very Strong Support for **Inclusion** |

Therefore, the weight of the evidence is very strong given the facts of this case and the DNA finding listed above. The weight of the evidence should be considered equally with the other § 3142 factors. Notably, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should

not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are— in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the defendant should be detained pretrial.

**V.    The Defendant's History and Characteristics Merit Detention.**

The third factor, the defendant's history and characteristics, likewise weighs in favor of detention. As described *supra*, and as outlined in the defendant's PSA report – all demonstrate that the defendant in a clear danger to the community if the Court releases him.

**VI.   The Defendant Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by the defendant's release, similarly weighs in favor of detention. The defendant's history and current violation of his supervision and prior arrest history indicates that he should be detained pending

10

trial as there is no other way to ensure the safety of the community. In fact, the Court may "consider prior arrests or charges brought against the defendant, even when those actions did not result in convictions." *United States v. Taylor*, 289 F. Supp 3d 55, 70 (D.D.C. 2018). In addition to his convictions, the defendant has other charges that were no papered and/or dismissed for want of prosecution.

Significantly, the defendant's possession of this firearm alone presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Finally, the defendant's previous encounters with the criminal justice system and previous firearm related conviction did nothing to deter him from possessing a loaded firearm nor did his current court supervised release status deter him from possessing a loaded firearm. Given the defendant's demonstrated noncompliance with the laws governing possession of firearm, the defendant presents an ongoing danger.

Here, Court's supervision is insufficient to prevent the defendant from possessing firearms and ensure community safety, as evidenced by his prior noncompliance with release terms. Because no condition or combination of conditions of release are adequate to protect the community from this defendant or the defendant's return to Court if released, this Court should detain him pending trial.

WHEREFORE, this Court should detain the defendant pending trial.

        Respectfully submitted,

        EDWARD R. MARTIN
        UNITED STATES ATTORNEY


By:    */s/Emory V. Cole*
        EMORY V. COLE
        PA. Bar No. 49136
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Telephone: (202) 252-7692
        Emory.Cole@usdoj.gov